# IN RE MANSON.

**PATENTS; APPLICATIONS; AMENDMENTS.**

**1. A** pending application may not be amended by the insertion of new matter not embraced in the original disclosure, with a view of having it relate back to the original filing date. (Following *Re Dilg,* 25 App. D. C. 9; *Re Scott,* 25 App. D. C. 307; and *Re Mraz,* 36 App. D. C. 435.)

2. Where an applicant for a patent for a push button for electric auto-
mobile horns, which will enable the operator to give low or loud
signals at will by simply varying the pressure upon the button,
seeks by way of amendment to bring into his application certain
claims having nothing to do with the production of signals of vary-
ing intensity, but relating wholly to the production of a single
signal by a tilting motion of the button, and it is not apparent
that the tilting action is inherent in the structure as originally dis-
closed, or that those skilled in the art would, in making the article
from such disclosure, naturally so construct it that it would have
the capability claimed for it in the new claims,—the amendment will
not be allowed.

No. 1068.   Patent Appeals.   Submitted November 17, 1916.   Decided Janu-
ary 2, 1917.

HEARING on an appeal from a decision of the Commissioner
of Patents rejecting certain claims in an application for a patent.
*Affirmed.*

The facts are stated in the opinion:

*Mr. F. O. Richey* for the appellant.

*Mr. William R. Ballard* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an *ex parte* appeal from the decision of the Commis-
sioner of Patents affirming the decision of the Board of Ex-
aminer in Chief which, in turn, affirmed the decision of the
Primary Examiner rejecting claims 11 to 21, inclusive, for an
invention relating to circuit closers of the push-button type for
use with electric horns.

Claims 11 and 21 of the rejected claims sufficiently describe
the features of applicant's invention here involved:

"11. In a device of the class described, the combination of
a casing, electrical contacts mounted therein, a push button
concentric with said casing and of large horizontal area, catch
means mounted on the casing and companion catch means on the

button, said catch means normally engaging each other at a plurality of points, spring means normally pressing said members together and a device for placing said contacts in electrical connection when the push button is tilted."

"21. In a circuit controller, the combination of a stationary member and a movable member, means for creating a loose pivotal engagement between said members at a plurality of points, and an electric switch operated when said movable member is operated about any of the said points of pivotal engagement."

In the original application of appellant, Ray H. Manson, into which he now seeks to bring these claims by way of amendment, the object of the invention is stated as follows: "My invention relates to devices for controlling electrical circuits, and while I contemplate its use in a number of situations, a description of its use in connection with automobile horns will aptly illustrate the functions. Where it is desired to operate a horn to give a loud or a low signal by varying the strength of the current, it is desired that the controlling means should be easily operated and accessible to the driver. The circuit controller which I have produced may be operated to condition the horn to produce different signals by varying the pressure upon the button, and it may be placed upon the steering wheel or, if desired, on the top of the steering post."

The claims before us were rejected by each of the tribunals below on the ground that they relate to new matter not disclosed in the original application. Applicant's claims 1 to 10, inclusive, covering the invention disclosed in the original application, were allowed. The application as filed was for a push button for electric automobile horns, which would enable the operator to give low or loud signals at will by simply varying the pressure upon the button. The supply of current is so regulated by the degree of pressure from the operator as to produce low or loud signals at will.

The present claims of the amendment have nothing to do with the production of signals of varying intensity. They relate wholly to the production of a single signal by a tilting motion

of the button. It is conceded that the original application con-
tained no reference whatever to the operation of the button in
a tilted position, but applicant now contends that the structure
originally disclosed can be operated as well in a tilted position
by a pressure on the edge as by a straight depression. But to
reach this conclusion, we must read into his original disclosure
something not there to be found, namely, that the button operates
so loosely in its socket that, when pressed on the edge and thus
tilted in the socket, the points of contact will produce an elec-
trical connection. This introduces a new method of operating
the button, as well as means for producing the electrical con-
nection, a case well within the rule forbidding the insertion of
new matter by way of amendment to an original application. It
is well settled that a pending application may not be amended
by the insertion of new matter not embraced in the original dis-
closure, with a view of having it relate back to the original
filing date. *Re Dilg,* 25 App. D. C. 9; *Re Scott,* 25 App. D. C.
307; *Re Mraz,* 36 App. D. C. 435.

The test of applicant's right to make the claims of the amend-
ment is well stated in the opinion of the Board of Examiners in
Chief as follows: "Did the appellant's application as filed pre-
sent this inventive idea? The specification made no mention of
any tilting action. The only ground upon which it might be
held that the application as filed disclosed the tilting action is
that this action is inherent in the structure as the same was
originally disclosed. If those skilled in the art, making the
article from the information furnished in the original applica-
tion, would naturally so construct it that it would have the
capability here in question, this capability must be regarded as
inherent in the applicant's disclosure and, a necessary charac-
teristic of his invention whether originally known to or appre-
ciated by him or not. But if those skilled in the art making a
device in accordance with the application as filed would, as
likely as not, produce an article which would not have the
capability here in question, this capability cannot well be said
to be inherent in the applicant's original disclosure. If a device
might naturally be constructed from the applicant's specifica-

tion and drawing as filed which would have every mode of operation and fulfil every purpose suggested in the specification as filed, and not be capable of closing the circuit by a mere tilting of the button, we cannot see how the applicant can have originally disclosed an invention which has this capability for its distinguishing characteristic."

Clearly the decision of the Commissioner of Patents is right. It, therefore, is affirmed, and the clerk is directed to certify these proceedings as by law required.                    *Affirmed.*

Mr. Justice McCoy, of the Supreme Court of the District of Columbia, sat with the court in the hearing and determination of this appeal in the place of Mr. Chief Justice SHEPARD.